UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBORAH SZURLINSKI, et al.,

      Plaintiffs,

v.                                        Case No. C-1-04-743

UNION TOWNSHIP, OHIO,

      Defendant.

**ORDER**

    This matter is before the Court upon defendant's motion for summary judgment (doc. 25), plaintiff's opposing memorandum (doc. 30), and defendant's reply (doc. 37). The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 32, 34).

**I. Procedural and factual background**

    Plaintiffs Deborah Szurlinski, a resident of the Commonwealth of Kentucky, and Rhonda Whitaker and Jennifer Haley, residents of the State of Ohio, bring this action against defendant Union Township, Ohio.  Plaintiffs bring claims for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and Ohio Rev. Code § 4112.02.  Plaintiffs also bring claims for breach of Ohio public policy.  Plaintiffs allege that they were treated differently than similarly-situated male employees and terminated from their jobs as part-time paramedics with defendant on account of their gender.

1

## II.  Motion for summary judgment

Defendant moves for summary judgment in its favor on all claims.  Defendant argues that plaintiffs cannot prevail on their discrimination claims under a disparate treatment theory because they have not suffered an adverse employment action.  Defendant claims that plaintiffs have not been terminated from their employment; they are not qualified for the firefighter position in question because they have not obtained the necessary certification to be placed on the work schedule; and they were not treated differently than similarly-situated individuals.  Defendant further argues that it had legitimate, non-discriminatory reasons for its actions.  Defendant also asserts that plaintiffs' claims based upon a disparate impact theory must be dismissed because plaintiffs have failed to produce statistical evidence demonstrating that a specific employment practice caused a significant disparate impact on a protected group.  In addition, defendant argues that plaintiffs cannot prove the elements of a public policy violation.  Finally, defendant asserts that it is entitled to immunity with respect to plaintiffs' state law claims and that plaintiffs cannot bring a punitive damages claim against it.

## III.  Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608-09 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289, 88 S.Ct. at 1592). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Id.* at 251-52, 106 S.Ct. at 2511. If the evidence is merely colorable (*Id*. (citing *Dombrowski v. Eastland,* 387 U.S. 82, 84, 87 S.Ct. 1425 (1967)), or is not significantly probative (*Id*. (citing *Cities Serv.*, 391 U.S. at 290, 88 S.Ct. at 1592), judgment may be granted.

### IV. Undisputed facts

1. Plaintiff Szurlinski is a resident of the Commonwealth of Kentucky. Plaintiffs Whitaker and Haley are residents of the State of Ohio.
2. Defendant Union Township, Ohio is an Ohio municipality and an employer within the meaning of state and federal law.
3. Union Township has 3 fire stations, 46 firefighters, 6 staff officers, and 2 administrative assistants.

4.  Plaintiffs are female paramedics who worked part-time for the Union Township Fire Department.

5.  Szurlinski began working for Union Township during the 1990's and worked approximately 24 hours a week.

6.  Haley began working for Union Township in 1996 and worked approximately 12 hours a week.

7.  Whitaker began working for Union Township in 1993.

8.  All three plaintiffs are trained paramedics who never received any complaints or grievances about their level of work performance, their dedication, their loyalty, or their work ethic. According to Assistant Fire Chief Jeffrey Jackson, they were all "outstanding paramedics."

9.  On June 19, 2003, Fire Chief Stanley Deimling distributed a memorandum that required all part-time employees to be certified as Firefighter II's and EMTs in order to be placed on the work schedule, effective September 2003.

10. Plaintiffs already had their paramedic training at the time the memorandum was issued.

11. According to the memo, "in order to maintain employment," part-time employees were required to meet these training requirements no later than the October 2003 schedule. Additionally, the new policy stated that part-time employees would be required to work a minimum of 24 hours per week.

12. At the time of the June 2003 memo, there were five part-time employees with the Fire Department - plaintiffs, Brian Dunkle, and Jim Sparke.

13. On June 22, 2003, plaintiffs submitted a grievance regarding the Firefighter II certification requirement. On August 15, 2003, defendant extended plaintiffs' time to complete the certification and "maintain employment" to June 1, 2004, but did not place them on the schedule after the September 2003 deadline.

14. Plaintiffs have not obtained the required certification.

15. Union Township currently lists four part-time paramedics on its roster - plaintiffs and Sparke. Dunkle resigned following issuance of the June 2003 memorandum.

16. Since September 2003, no part-time firefighter has been placed on the schedule who does not have Firefighter II certification. Sparke obtained his certification and has been placed on the schedule.

17. Defendant asserts that safety concerns underlie the Firefighter II certification requirement, citing in particular the need for additional training in the aftermath of September 11, 2001.

18. The collective bargaining agreement between Union Township and its firefighters does not require that all firefighters or paramedics have Firefighter Level II training.

19. The State of Ohio does not require the higher Level II training for part-time employees.

20. The decision to require Level II certification was made by Fire Chief Deimling. It was not required as a result of negotiations with the Union Township firefighters. Prior to June 19, 2003, full-time firefighters were required to obtain Level II training within one year of being hired, during which time they were placed on the schedule and permitted to work.

21. Chief Deimling knew that plaintiffs had other jobs outside the Fire Department.

22. The Ohio Fire Academy, where Union Township prefers that its firefighters acquire the Level II training, provides a seven-week course that runs 40 hours per week, Monday through Friday. Chief Deimling never considered sending plaintiffs to the Ohio Fire Academy in August or September of 2003.

23. Several local vocational schools, such as Great Oaks, Live Oaks, Diamond Oaks, and Scarlet Oaks, also offer Level II training. It takes approximately six months to obtain the certification through one of these local schools.

24. Union Township paid the tuition costs of full-time firefighters to receive Level II training. They were also allowed to take the course on Township time and were paid their salary during the training.

25. Plaintiffs were not going to be paid for their time in taking the training, which takes approximately 280 hours.

26. After plaintiffs filed a formal grievance, defendant agreed to pay for plaintiffs' books and materials for taking the course. Defendant also extended the deadline for completing the course to "maintain employment" from October 2003 to June 2004.

27. Defendant did not extend the September deadline to place plaintiffs on the work schedule.

28. Plaintiffs were required to expend personal time and money if they wanted to obtain the Level II training while no longer scheduled for work with defendant.

29. The new policy of June 19, 2003, requiring both Firefighter Level II and EMT/paramedic certification, applied to all employees, full-time or part-time.

30. Since 1990, full-time firefighters are required to have EMT certification before they can be put on a schedule.

31.    Two male firefighters, Firefighter Willis and Firefighter McCulla, do not have paramedic certification. However, they were never taken off the schedule because of their lack of training.

### V. Gender discrimination claims

Under the law of this Circuit, the same evidentiary framework applies to discrimination claims brought under Title VII and state law. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992). A plaintiff claiming discrimination under these statutes may establish a prima facie case by introducing either direct or circumstantial evidence that the defendant discharged the plaintiff because of her gender. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994). Plaintiff may establish a prima facie case of gender discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost or not gained; and 4) her position was filled by someone outside of the protected class. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 313 (6th Cir. 1989)).

Plaintiff may also establish the fourth prong of a prima facie case by showing that she was treated less favorably than a similarly-situated employee outside of her protected class. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). In such a case, plaintiff must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have

engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* at 352 (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000).

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. *Mitchell,* 964 F.2d at 582-84. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must prove by a preponderance of the legal evidence that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981). Plaintiff has the ultimate burden of proving that gender was a determining factor in the adverse employment decision. *Chappell v. GTE Products Corp.,* 803 F.2d 261, 265 (6th Cir. 1986).

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. *Manzer,* 29 F.3d at 1084. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.*

For the second showing, where the plaintiff admits the factual basis underlying the

employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

Although the Court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. ***Wexler v. White's Furniture, Inc.***, 317 F.3d 564, 576 (6th Cir. 2003)(citing ***E.E.O.C. v. Yenkin-Majestic Paint Corp.***, 112 F.3d 831, 835 (6th Cir.1997)). The Court in ***Wexler*** addressed the extent to which a fact-finder may consider the reasonableness of an employer's decision:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. ***Smith v. Chrysler Corp.***, 155 F.3d 799, 807 (6th Cir.1998)) (holding that in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); ***In re Lewis***, 845 F.2d 624, 633 (6th Cir.1988) ('Sears does not have to establish that the basis on which it acted in firing Lewis was *sound;* rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.') (emphasis in original) (internal quotation marks omitted).

Upon a careful review of the record, the Court finds that plaintiffs have not come forward with sufficient evidence to establish a prima facie case of gender discrimination. The first three prongs are satisfied. First, plaintiffs are members of a protected class. Second, it is undisputed that prior to imposition of the Level II certification requirement, plaintiffs were qualified for their positions, and there were no issues with their job performance. Accordingly, the Court finds for summary judgment purposes that plaintiffs are able to satisfy the qualification prong of their prima

9

facie case.  Third, although the parties disagree as to whether plaintiffs have been terminated from their positions, it is undisputed that plaintiffs have not been placed on the schedule due to their failure to obtain their Level II certification.  Defendant's refusal to place plaintiffs on the schedule constitutes an adverse employment action.

      The question then becomes whether plaintiffs have come forward with sufficient evidence to establish the fourth prong of their prima facie case.  Plaintiffs allege that the proper comparison to be made for purposes of determining whether they have been treated less favorably than similarly-situated individuals outside the protected class is between them and male full-time employees.  Plaintiffs allege that this is the appropriate comparison to be made because the June 19, 2003 policy requiring Level II and paramedic certification applied to both full-time and part-time employees, and three out of the four part-time employees on defendant's roster are female and all but one of the full-time firefighters are male.  Plaintiffs allege that they have been treated differently than similarly-situated male firefighters in several respects.  They claim that numerous times prior to June 19, 2003, defendant hired male full-time firefighters who did not have their Level II certification and then gave these firefighters one year to obtain their certification in accordance with Ohio law.  Plaintiffs allege that defendant preferred to send firefighters to the Ohio Firefighter Academy to obtain the training and certification, defendant paid the costs for obtaining the certification, it paid the firefighters for their time while taking the training, and it scheduled them to work during the year they received the training.  In contrast, plaintiffs were initially given less than three months to complete the training, after which they would no longer be placed on the schedule, although the deadline for training in order to maintain employment was later extended by nine months.  Plaintiffs assert that defendant never considered sending them to

the Ohio Fire Academy during those months and initially refused to pay plaintiffs' costs for books, materials, tuition, and time for taking the course, although defendant later agreed to pay for books and materials. In addition, plaintiffs allege that although the June 19, 2003 policy required that all employees have paramedic certification, several male firefighters who did not have paramedic certification were not given a deadline to receive the certification and are still scheduled to work.

There is no question that plaintiffs have been treated differently than full-time firefighters. However, the Court finds that the proper comparison to be made in this case for purposes of a disparate treatment analysis is not between plaintiffs and the full-time firefighters on the Union Township Fire Department. This is not the proper comparison to make because these two groups are not similarly-situated in all relevant respects. First, the most obvious difference is the plaintiffs were part-time employees who did not receive the same benefits as the full-time firefighters. Second, the two groups had different job duties prior to imposition of the Level II certification requirement. Plaintiffs were paramedics who were not qualified to perform firefighting duties, whereas the full-time firefighters were trained to perform firefighting duties. Third, the full-time firefighters were covered by a collective bargaining agreement while plaintiffs were not. (Deimling depo., p. 44). One of the requirements of the collective bargaining agreement was that firefighters who were hired before June 2003 without their Level II certification would be paid while they took their training on Township time. Fourth, as part-time employees, plaintiffs were not bound by a state law requirement that Level II certification be obtained within one year of hire, which was a requirement for full-time firefighters. Each of these distinctions is material in the context of plaintiffs' claims and precludes a finding that plaintiffs and the full-time firefighters were similarly-situated in all material respects.

Assuming plaintiffs and the full-time firefighters were similarly-situated in all material respects, plaintiffs have nonetheless failed to come forward with sufficient evidence to show that they were treated differently than similarly-situated individuals *outside of the protected class*. At the time the Level II certification requirement was imposed on the part-time employees, there were three female part-time employees and two male part-time employees in the Union Township Fire Department. The certification requirement was imposed on the male and female part-time employees alike. The female part-time employees were not singled out for dissimilar treatment. Moreover, although plaintiffs' treatment may not have been comparable to that of the male full-time firefighters, neither was it comparable to that of the female full-time firefighter with the Department. Thus, comparing plaintiff's treatment to that accorded the full-time firefighters, both male and female, cannot support an inference of discrimination under the facts of this case.

Further assuming plaintiffs have come forward with sufficient evidence to establish a prima facie case of discrimination, defendant is nonetheless entitled to summary judgment because plaintiffs have failed to come forward with sufficient evidence to create a genuine issue of material fact on the question of pretext. Defendant has offered legitimate, nondiscriminatory reasons for imposing the Level II certification requirement and refusing to put part-time employees back on the schedule after September 2003 until after they had obtained their certification. Defendant asserts that the decision to require the part-time employees to obtain Level II certification before they would be placed on the schedule was made as a result of negotiations with the Union Township Firefighters and a review of the literature emphasizing the importance of adequate staffing and training levels for safety. Defendant alleges that a baseline training level of Firefighter II was decided upon, and a commitment was made that four trained firefighter/EMTs

would be on duty at all times at each firehouse. Defendant asserts that the decision was made for the safety of the firefighters and the public and to insure that a consistent and professional level of service would be provided to the public.

Plaintiffs contend that there are genuine issues of fact as to whether defendant's articulated reasons for its action are a pretext for gender discrimination. Plaintiffs phrase defendant's reasons as (1) "the requirement was necessary under the collective bargaining agreement and negotiations with Union Township Firefighters," and (2) "Firefighter Level II certification is necessary for the safety of the firefighters and the public." Plaintiffs contend that neither of these rationales hold up under the *Manzer* analysis. Plaintiffs acknowledge that as a result of union negotiations and safety research, Union Township instituted a policy where a Lieutenant and four firefighters would be stationed at each firehouse, but plaintiffs argue there was no requirement under the collective bargaining agreement that the firefighters have Level II training.

In presenting their arguments, plaintiffs have misrepresented defendant's position. Defendant does not allege that the Level II certification requirement was "necessary" under the collective bargaining agreement. Defendant asserts only that the decision to impose the certification requirement grew out of the negotiations with the firefighters' union. The fact that the decision to impose the requirement was ultimately a management call in no manner calls into question whether the asserted justification for the requirement is valid.

Plaintiffs allege that defendant's proffered safety reason has no basis in fact. Plaintiffs contend that defendant offers no evidence that requiring part-time paramedics to have Level II certification will provide a higher level of safety to the public or firefighters. Plaintiffs further allege that defendant's reliance on the "2 in and 2 out rule" in a fire situation as its motivation for

13

staffing its fire stations with four individuals with Level II certification and a supervisor is unsupported by evidence that defendant actually follows that rule.[1]  Plaintiffs note that, in fact, Assistant Fire Chief Jeffrey Jackson stated at his deposition that sometimes only two firefighters go to a scene (Jackson depo., pp. 27-28), which plaintiffs suggest would be inconsistent with the rule.

At his deposition, Chief Deimling cited authorities and documents supporting the "2 in and 2 out rule" and explained how defendant decided to staff its firehouses with four firefighters and one supervisor based on the rationale underlying the rule.  Chief Deimling also explained how defendant decided at the same time to impose a minimum level of training for all its staff at the firehouses.  Deimling depo., pp. 35-38.  Defendant's failure to produce additional evidence to prove that implementation of these changes would actually increase public and firefighter safety as defendant purportedly believed and hoped they would does not call into question whether the changes were "reasonably informed" and "considered."  Nor is Assistant Chief Jackson's statement at his deposition that sometimes only two firefighters go to a scene, on which he did not elaborate, call into question whether the reason for requiring Level II certification of part-time personnel has a basis in fact.

Plaintiffs also assert that defendant "offers no other safety statistics, practices, or concerns that would require Plaintiffs receive Level II certification."  Plaintiffs contend that defendant has not cited a single incident where plaintiffs' presence on a run decreased safety or where their

---

[1] Chief Deimling described the "rule" as a safety policy which holds that any time two firefighters are in a hazardous environment, two individuals who are trained to effectuate a rescue should remain on the outside in case the other two firefighters get into trouble.  Deimling depo., p. 36.

having Level II training would have increased safety. Plaintiffs allege that defendant routinely calls in for aid from neighboring departments without requiring that those departments send only individuals with Level II certification. Plaintiffs contend that defendant could not explain why it would be safer to allow plaintiffs to work until September 2003 without the certification but less safe thereafter.

It is true that defendant has not cited any specific instances where plaintiffs endangered anyone by their lack of the Level II certification. Defendant's failure to do so does not, however, call into question the validity of defendant's rationale for imposing a higher training level requirement for the reasons stated above. Neither does defendant's decision to allow plaintiffs to continue to work several months without the certification so as to give them an opportunity to obtain the necessary training, nor the Department's practice of calling on aid from other departments who might have paramedics without Level II certification, call into question the validity of defendant's decision to impose the Level II certification requirement. By asking the Court to determine otherwise, plaintiffs are seeking to have the Court to substitute its judgment for that of the Fire Chief on matters of public safety and the administration of his Department that are peculiarly within his area of expertise. This is not the function of either the Court on summary judgment or of the trier-of-fact. The evidence plaintiffs have presented is simply not sufficient to call into question whether defendant's asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.

Plaintiffs also argue that the proffered safety reason did not actually motivate defendant's actions. Plaintiffs argue that defendant knew or should have known when it issued the June 2003 memorandum that plaintiffs could not meet the September deadline for remaining on the schedule

and the October deadline for maintaining employment. Plaintiffs also assert that a reasonable jury could determine that the requirement that they work a minimum of 24 hours a week that was imposed at the same time as the Level II certification requirement was not imposed for the stated reason, i.e., so that all employees were familiar with operations and equipment, but was instead designed to discourage plaintiffs from acquiring the necessary training or continuing employment. Plaintiffs further point to alleged past instances of discriminatory conduct based on gender as evidence of pretext.

The evidence does suggest that it would have been difficult, if not impossible, for plaintiffs to complete their training by October 2003, the initial deadline for maintaining employment, while keeping their full-time jobs and continuing to work for defendant part-time. However, the time limit and work hours requirement posed the same difficulty for all of the part-time employees, male and female. Plaintiffs have not shown how these requirements were designed to discourage only the female part-time employees from continuing their employment. Nor have plaintiffs shown how these requirements have prohibited them from continuing their employment with defendant since there is no apparent bar to plaintiffs being placed on the schedule upon obtaining the required certification. Finally, plaintiffs have not shown that the past instances of gender discrimination they allege, including defendant's failure to provide separate sleeping quarters and a shower for females and a lock on the female bathroom, failure to provide protective gear for plaintiffs, and isolated gender-based remarks directed at plaintiffs and other females, had any connection with imposition of the Level II certification requirement. These incidents are simply not indicative of an intent by defendant to discriminate against females by imposing the Level II certification requirement.

Plaintiffs further allege that defendant's proffered safety reason is insufficient to motivate defendant's action. Plaintiffs note that defendant allowed male full-time firefighters one year from the time of hire to acquire Level II certification and scheduled them for work without the certification, and defendant also allowed two male firefighters to remain on the schedule without paramedic certification despite the fact that 75% of the fire department runs required paramedic services. These facts do not, however, call into question the validity of defendant's safety concerns that it has proffered as the reason for imposing the Level II certification requirement for part-time employees. Plaintiffs have failed to come forward with sufficient evidence to call into question whether defendant's articulated, non-discriminatory reason for imposing the Level II certification requirement on the part-time employees is actually a pretext for gender discrimination.

In addition to positing a disparate treatment theory, plaintiffs allege that there are genuine issues of fact as to whether defendant's Level II certification policy had a disparate impact on females. "Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class." **Bender v. Hecht's Dept. Stores,** 455 F.3d 612, 622 (6th Cir. 2006) (citing **Laugesen v. Anaconda Co.,** 510 F.2d 307, 317 (6th Cir.1975)). To create an inference of discrimination, the statistics must demonstrate "a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." **Id.** (citations omitted).

Plaintiffs claim that defendant's facially neutral policy had the effect of terminating three out of four, or 75%, of the non-clerical female workforce for the fire department, while only two out of 43, or 4.6%, of the male non-clerical workforce was affected. For the reasons stated above,

the proper basis of comparison in this case is not between (1) all male firefighters and paramedics and (2) all female firefighters and paramedics because these individuals were not all similarly-situated. Rather, the appropriate comparison to be made is between male and female part-time paramedics. The Level II certification requirement impacted the three female part-time paramedics in the same manner as it affected the two male part-time paramedics. An adverse impact on three females as compared to two males is not statistically significant. Plaintiffs cannot establish gender discrimination under a disparate impact theory.

## VI. Public policy claims

In *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court recognized the tort of wrongful discharge in violation of public policy. The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-58 (1995)(citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99). The clarity and jeopardy elements are questions of law to be determined by the court while the jury decides factual issues relating to causation and overriding justification.

In light of the Court's determination that plaintiffs have failed to come forward with

sufficient evidence to show the existence of genuine issues of fact on their gender discrimination claims, defendant is likewise entitled to summary judgment on plaintiffs' public policy claim.

### VII.  Remaining arguments

In light of the Court's determinations, the Court need not address defendant's arguments that it is entitled to immunity on plaintiffs' state law claims, that the Court should decline to exercise supplemental jurisdiction over those claims, and that plaintiffs cannot recover punitive damages against defendant.

### VIII. Conclusion

Defendant's motion for summary judgment is **GRANTED** as to all claims**.**  This case is **DISMISSED** and is **TERMINATED** on the docket of the Court at plaintiffs' cost.

**IT IS SO ORDERED.**

> S/ Herman J. Weber
> HERMAN J. WEBER
> SENIOR JUDGE, UNITED STATES DISTRICT COURT